# EXHIBIT A

125—Residential contract of sale. 11-2000

Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.

BlumbergExcelsior, Publisher, NYC. 10013
www.blumberg.com

WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").

CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

## Residential Contract of Sale

**Contract of Sale** made as of JULY  2018   BETWEEN

BRIAN COHEN & LORI C. COHEN

Address: 20 Koenig Drive, Oyster Bay, New York 11771

Social Security Number/ Fed. I. D. No(s):

hereinafter called "Seller" and

SCOTT NIEHER

Address: 130 Huntington Bay Road, Huntington, New York 11743

Social Security Number/ Fed. I. D. No(s):

hereinafter called "Purchaser".

**The parties hereby agree as follows:**

1. **Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:

Street Address: 20 KOENIG DRIVE
OYSTER BAY, NEW YORK 11771

Tax Map Designation:

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

2. **Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool sheds, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (*strike out inapplicable items*).

- Inground Sprinkler System
- Central AC
- Pool Equipment

Excluded from this sale are furniture and household furnishings and

3. **Purchase Price.** The purchase price is $850,000.00 payable as follows:

(a) on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Downpayment"):

$5,000.00

(b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed: $

(c) by a purchase money note and mortgage from Purchaser to Seller: $

(d) balance at Closing in accordance with paragraph 7: $845,000.00

4. Existing Mortgage. (Delete if inapplicable) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:

(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of ____ percent per annum, in monthly installments of $ ____ which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on ____

(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of

~~the payments of principal. Seller represents and warrants that the~~ amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.

(c) If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.

(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.

(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by ~~reason of the sale or conveyance of the Premises.~~

5. ~~Purchase Money Mortgage. (Delete if inapplicable.) If there is~~ to be a purchase money mortgage as indicated in paragraph 3(c) above:

(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $ for its preparation.

(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than ____ percent per annum and the total debt service thereunder shall not be greater than $ ____ per annum; and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate ~~such subordination.~~

6. Downpayment in Escrow. (a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank account at JP MORGAN CHASE BANK
address Main Street
Smithtown, New York 11787

until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a(n) non-interest-bearing account for the benefit of the parties. ~~If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon.~~ If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee

shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice or objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

7. Acceptable Funds. All money payable under this contract, unless otherwise specified, shall be paid by:
(a) Cash, but not over $ 1,000.00;
(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser; double-endorsed not acceptable checks
(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 500.00 ; and
(d) As otherwise agreed to in writing by Seller or Seller's attorney.

* SEE PARAGRAPH 8 OF THE RIDER
8. ~~Mortgage Commitment Contingency. (Delete paragraph if~~ inapplicable. For explanation, see Notes on Mortgage Commitment Contingency Clause.) (a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before ____ days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $ ____ for a term of at least ____ ~~years (or such lesser sum or shorter term as Purchaser shall be will-~~

~~ing to accept)~~ at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) ~~(Delete this subparagraph if inapplicable)~~ Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.

(e) If no Commitment is issued by an Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

~~(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.~~

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

9. **Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

10. **Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

~~(b) (Delete if inapplicable) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.~~

11. **Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i) The Premises abut or have a right of access to a public road;

(ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv) The Premises are not affected by any exemptions or abatements of taxes; and

(v) Seller has been known by no other name for the past ten years, except

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

12. **Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall

Blumberg Excelsior

3

accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(e)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

13. **Insurable Title.** Seller shall give and Purchaser shall accept such title as **any reputable title company doing business in the State of New York EXCEPT ADVANTAGE TITLE** shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

14. **Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a **bargain and sale with covenants against grantor's acts.**

deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

15. **Closing Date and Place.** Closing shall take place at the office of **Paula A. Miller
308 West Main Street, Suite 204
Smithtown, New York 11787**

at **10:00** o'clock on or about **JANUARY 15 2019** or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of **purchasers lending institution in Nassau/Suffolk (If outside Nass./Suff. $250.00 travel fee to Seller's attorney**

16. **Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a **single** family dwelling at the date of Closing.

(c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from the I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(e) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.

(f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

17. **Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

18. **Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing **or possession, whichever is later**:
(i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) ~~premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (iv) vault charges; (v) rents as and when collected.~~

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

19. **Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

20. **Use of Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

21. **Title Examination; Seller's Inability to Convey; Limitations of Liability.** (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance

Blumberg Excelsior

4

Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b)(i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

22. **Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller. *w/ful /* ✓

23. **Defaults and Remedies.** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty. *w/ful*

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

24. **Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

25. **Notices.** Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c) with respect to ¶7 (b) or ¶20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

This contract may be delivered as provided above or by ordinary mail.

26. **No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void. Purchaser may assign to an LLC entity prior to the closing.

27. **Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than

— INSIGNIA HOMES *Majority Owned by purchaser, Mr Flippers*

("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

28. **Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This Subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

(i) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

Continued on Rider attached hereto. *Delete if inapplicable.*

**In Witness Whereof**, this contract has been duly executed by the parties hereto.

.................................................... 
BRIAN COHEN                        Seller

.................................................... 
LORI C. COHEN                      Seller

Attorney for Seller:  Paula A. Miller

Address: 308 West Main Street, Suite 204
         Smithtown, New York 11787

Tel.: (631) 979-6666    Fax: (631) 979-6701

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

[signature]
.................................................... 
SCOTT NEHER                        Purchaser

.................................................... 
                                   Purchaser

Attorney for Purchaser:  Ted Gosman

Address: 33 Gerard Street, Suite 201
         Huntington, New York 11743

Tel.: (516) 974-4800    Fax:

.................................................... 
                                   Escrowee

## ~~NOTES ON MORTGAGE COMMITMENT CONTINGENCY CLAUSE~~
### for
### ~~RESIDENTIAL CONTRACT OF SALE~~

~~1. WARNING: the mortgage-commitment-contingency-clause for~~ the Residential Contract of Sale is a bar association form that attempts to provide a mechanism that makes the rights and obligations of the parties clear in sales of residences in ordinary circumstances. It should be reviewed carefully by Seller and Purchaser and their attorneys in each and every transaction to make sure that all the provisions are appropriate for that transaction. Negotiated modifications should be made whenever necessary.

2. Under the clause, the obligation of Purchaser to purchase under the contract of sale is contingent on Purchaser's obtaining a mortgage commitment letter from an Institutional Lender within the number of days specified for the amount specified. This refers to calendar days. Seller's attorney should state his/her calculation of the Commitment Date in the letter delivering the executed contract to Purchaser's attorney, to prevent confusion later. Purchaser should promptly confirm or correct that date. In applying for a loan, Purchaser should inform its lender of the scheduled date of closing in the contract and request that the expiration date of the commitment occur after the scheduled date of closing. Purchaser must comply with deadlines and pursue the application in good faith. The commitment contingency is satisfied by issuance of a commitment in the amount specified on or before the Commitment Date, unless the commitment is conditioned on approval of an appraisal. If the commitment is conditioned on approval of an appraisal and such approval does not occur prior to the Commitment Date, Purchaser should either cancel the contract or obtain an extension of the Commitment Date. If the commitment is later withdrawn or not honored, Purchaser runs the risk of being in default under the contract of sale with Seller.

3. If there are loan terms and conditions that are required or would not be acceptable to Purchaser, such as the interest rate, term of the loan, points/fees or a condition requiring sale of the current home, those terms and conditions should be specified in a rider.

4. This clause assumes that initial review and approval of Purchaser's credit will occur before the commitment letter is issued. Purchaser should confirm with the lender that this is the case before applying for the commitment.

5. If, as has been common, the commitment letter itself is conditioned ~~on sale of Purchaser's home or payment of any outstanding~~ debt ~~or no material adverse change in Purchaser's financial condition~~, such a commitment will satisfy the contract contingency nonetheless, and Purchaser will take the risk of fulfilling those commitment conditions, including forfeiture of the downpayment if Purchaser defaults on its obligation to close. Under New York case law, a defaulting purchaser may not recover any part of the downpayment, and Seller does not have to prove any damages. If Purchaser is not willing to take that risk, the clause must be modified accordingly.

6. Purchaser may submit an application to a registered mortgage broker instead of applying directly to an Institutional Lender.

7. This clause allows Seller to cancel if a commitment is not accepted by Purchaser by the Commitment Date, unless Purchaser timely supplies a copy of the commitment, to allow Seller the option to avoid having to wait until the scheduled date of closing to see if Purchaser will be able to close. Seller may prefer to cancel rather than to wait and settle for forfeiture of the downpayment if Purchaser defaults. Because of Seller's right to cancel, Purchaser may not waive this contingency clause. This clause means that Purchaser is subject to cancellation by Seller even if Purchaser is willing to risk that he/she will obtain the Commitment after the Commitment Date. Some Purchasers may not want to be subject to such cancellation by Seller.

8. Purchaser may want to add to paragraph 22 that Purchaser's reimbursement should include non-refundable financing and inspection expenses of Purchaser, which should be refunded by Seller if Seller willfully defaults under the contract of sale [alternative: if Seller is unable to transfer title under the contract of sale].

9-25-00

Joint Committee on the Mortgage Contingency Clause:
Real Property Section of the New York State Bar Association
Real Property Law Committee of the Association of the Bar of the City of New York
Real Property Committee of the New York County Lawyers Association

6

Blumberg Excelsior

RIDER TO CONTRACT OF SALE

DATE:       JULY _____, 2018

SELLER:     BRIAN & LORI C. COHEN, SELLERS

PURCHASER:  SCOTT NEHER, PURCHASER

PREMISES:   20 KOENIG DRIVE, OYSTER BAY COVE, NEW YORK 11771

SECTION:       BLOCK:          LOT:

This Rider is annexed hereto and forms part of the Contract of Sale dated as of the _____ day of July 2018 by and between:

BRIAN & LORI C. COHEN, "SELLERS"
and SCOTT NEHER, "PURCHASER"

(1) **TERMS OF SALE:** The above premises are sold and are subject to the following additional provisions, provided same do not render title unmarketable:

(a) Any state of facts an accurate survey may show, provided same does not render title unmarketable;

(b) Variations, if any, between walls, retaining wall, fences, hedges, buildings and the like, and the lines of record title and to encroachments of stoops, cellar steps, trim and cornices, awnings, eaves, roofs, and the like, if any, upon the street, sidewalk or highway, or upon any adjoining property or buildings;

(c) Zoning ordinances, subdivision regulations, site plan ordinances and restrictions, building restrictions and regulations, and to any other governmental regulations and amendments thereof as far as the same may in any way affect the Premises or any part thereof at the date of closing;

(d) Any other or further covenants, declarations, easements, licenses, restrictions, reservations and agreements of record, if any, provided same are not violated by existing structures and/or a violation of same will not result in forfeiture of title;

(e) Variations between the County Land and Tax Map and the record description, if any;

(f) Purchaser shall not reject title if existing Premises violates any of the aforementioned provided that a reputable title insurance company will insure that such improvements may remain in their present location as long as same shall stand;

(g) Franchise taxes against any prior owner in the chain of title providing that a title insurance company will insure against collection of same against the Premises;

(h) Any state of facts a personal inspection of the Premises may show.

(i) Variations between fences and/or hedges and the record lines of the Premises shall not be deemed to render title unmarketable provided the variations are less than one (1) foot. If variations exceed (1) foot, and Purchaser is not willing to close subject to the offending variation, Seller or Purchaser may elect to cancel the contract, in which case Purchaser shall receive a full refund of their down payment. If Purchaser elects to cancel, it shall be Sellers

sole election to obtain an Affidavit of No Claim or Boundary Line Agreement from the adjoining property owner, acceptable to Purchaser's title company, in which case Purchasers must proceed with this transaction.

(2) <u>SELLER'S INABILITY TO CLEAR TITLE:</u> The parties agree that if for any reason whatsoever, other than the Seller's willful default, Seller is unable to deliver to Purchaser a good and marketable title in accordance with the provisions of this Contract, and subject to the matters set forth in this Contract, the Seller shall not be required to bring any action or proceeding or otherwise incur any expense to render title marketable, and if Purchaser shall refuse same, Seller may rescind this Contract and upon returning to Purchaser herein the sum paid on the signing of this Contract and the net title company expenses for the examination of title to the premises, all further liability on the part of the Seller hereunder shall cease and terminate, and this Contract shall become and be canceled and of no further force and effect, and Seller shall not be liable for any other cost or damage whatsoever.

(3) <u>CONDITION OF PREMISES:</u> The Purchaser has examined the Premises and the personal property appurtenant to or used in the operation of the same and is familiar with the physical condition of the same and agrees to purchase the same "AS IS" in their present physical condition. Neither the Seller nor any agent or representative of the Seller has made or herein makes any representations or promises upon which the Purchaser has relied regarding the condition of the Premises. This paragraph shall not be construed as a warranty surviving delivery of deed or transfer of possession, whichever is later. This is as "AS IS" transaction.

(4) <u>ESCROW OF DOWN PAYMENT:</u> The down payment herein shall be held in an IOLA escrow account maintained by the attorney for the Seller until closing of title or termination of this Contract. In the event of a dispute between the parties, Seller's attorney shall be authorized to pay the money held by him into court, and on so doing, shall be completely discharged and released from any further obligation or liability with respect thereto.

(5) <u>OBJECTIONS TO TITLE:</u> The Purchasers agree to furnish the Sellers with a written list of any title objections and liens upon the Premises not less that fifteen (15) days prior to the date of closing, and if it appears from such objections or exceptions that time will be required within which to remove the same, then in such event, the Sellers shall have a reasonable adjournment of closing of title within which to clear such objections, and all adjustments shall be made as of the date of closing.

(6) <u>TERMITE INSPECTION:</u> *THIS PARAGRAPH INTENTIONALLY OMITTED.*

(7) <u>CERTIFICATE OF OCCUPANCY:</u> The Sellers shall deliver to the Purchasers at or prior to closing certificate(s) of occupancy or completion for all improvements requiring same by the local municipal authority, except for above ground pools, wood burning stoves, retaining walls, fences, decks, or sheds, which shall be removed without allowance or abatement of the purchase price if same is an impediment to closing. In lieu thereof, and if applicable, the Sellers shall so deliver and Purchasers shall accept, a letter from the appropriate municipal authority that the premises are legally non-conforming or that it was built prior to the requirement for any certificate. Notwithstanding anything herein to the contrary, should the Sellers:

 (a) Not be able to deliver the afore-described certificates or letter; and

(b) Should the reasonable cost to obtain same exceed $~~1,000.00~~ 5,000. including the cost of any municipal charges, architectural, or other fees and the reasonable cost of construction, alteration, or demolition, or;

(c) If same cannot reasonably be obtained within sixty (60) days of the proposed closing date set forth in the printed Contract; or

(d) Should a variance or rezoning application be required, then and in that event, either party shall have the right to cancel this agreement except as to (b), which shall be at Sellers' sole option, whereupon Purchasers' down payment shall be forthwith returned. In the event a new survey is required to obtain any certificate(s) of occupancy or completion, Purchasers agree to provide such a survey to Sellers.

(8) <u>MORTGAGE CONTINGENCY</u>: *THIS PARAGRAPH INTENTIONALLY OMITTED*

Notices to Sellers shall be sent to:

> Paula A. Miller
> 308 West Main Street, Suite 204
> Smithtown, New York 11787
> (631) 979-6666

Notices to Purchasers shall be sent to:

> Ted Gosman
> 33 Gerard Street, Suite 201
> Huntington, New York 11743
> (516) ~~(631)~~ 974-4800

(9) <u>POSSESSION</u>: *THIS PARAGRAPH INTENTIONALLY OMITTED*

(10) <u>PURCHASER'S DEFAULT</u>: Should the Purchasers willfully default in the performance of any of the terms of this Contract, and/or fail to accept the deed of the Premises in accordance with the terms of this Contract, then inasmuch as the damages of the Sellers would be substantial and it would be difficult to ascertain the actual damages suffered by Sellers, then this Contract shall be deemed canceled and the amount paid and deposited shall thereupon belong to Sellers and be retained by them not as a penalty, but as liquidated damages, and this Contract shall become thereupon null and void and neither party shall have any further rights against the other.

(11) <u>DELIVERY OF PREMISES</u>: Sellers shall deliver the Premises vacant and broom clean and free of tenancy on closing of title. Purchasers shall have the right to inspect the Premises at reasonable times forty eight (48) hours prior to closing.

(12) <u>BROKERS</u>: The Purchasers represent to Sellers that Purchasers have had no dealings, used the services of, or have employed any real estate broker except the broker referred to in the printed form of this Contract in connection with the Premises herein. The Purchasers agree that if any claim should be asserted by any other broker arising out of any negotiations or dealings by Purchasers, that Purchasers shall hold the Sellers harmless and indemnify Sellers for any action resulting from such brokerage claim, including reasonable attorneys' fees. This provision shall survive delivery of the deed.

*[handwritten margin notes: "short sale", "PO", "money", "PO"]*

(13) PAYMENT/METHOD OF PAYMENT: In the event that the check given as a down payment and delivered by the Purchasers to the Sellers upon the execution of this Contract is dishonored for any reason by the bank upon which it is drawn, then the Sellers, in addition to any other rights and remedies which they may have, may at their option declare this Contract null and void, and thereupon the Sellers may be released from all obligations thereunder.

It is understood that Sellers will not be required to accept any endorsed checks at the time of closing. All certified and/or teller's checks presented at the closing shall be made payable directly to Sellers, unless advise to the contrary is given to the Purchasers. All checks shall be drawn on banks located in the State of New York.

If Purchasers' uncertified checks given at closing are not paid by Purchasers' bank for any reason whatsoever, Purchasers agree to reimburse Sellers for all collection costs including reasonable attorneys' fees and this provision shall survive delivery of the deed.

(14) TIME PERIODS: All time periods in this Contract shall be measured from the date when Purchasers' attorney receives the fully executed Contracts.

(15) ASSIGNMENT: This Contract may not be assigned or transferred by either party, unless agreed by both parties, *which assignment shall not be unreasonably withheld as buyer may elect to assign to a Corporate or LLC entity prior to closing which*

(16) ACCEPTANCE OF DEED: The acceptance of a deed by the Purchasers shall be deemed to be full performance and discharge of every agreement and obligation on the part of the Sellers to be performed pursuant to the provision of this agreement except those, if any, which are herein specifically stated to survive the delivery of the deed. *Corporate entity is owned (as majority) by buyer. No flipping*

(17) RIDER: Whenever this Rider is in conflict with any other portion of this Contract, this Rider shall prevail in all respects.

(18) SMOKE DETECTOR: The Premises shall be equipped with a smoke detector as required by applicable statute.

(19) CONTRACT: It is expressly understood and agreed that this Contract states the entire agreement between the parties and that the Sellers are not and shall not be bound by any stipulations, representations, agreements, or promises, oral or written, not specifically set forth in this Contract.

This Contract shall not be deemed binding on the Sellers unless and until the Sellers affix their handwritten signatures to this Contract and until such time the Sellers may withdraw the property from sale to the Purchaser.

(20) SURVEY: Purchaser agrees that in the event a survey is required for the purpose of obtaining proper title insurance to the Premises, Purchasers will obtain the same at Purchasers' sole cost and expense. *but not for a C/o*

(21) CALCULATIONS/COMPUTATIONS: Both parties hereby agree to cooperate with each other with respect to the correction of any mathematical /computational figures stated in the Contract and/or adjustments made at closing. This clause shall survive delivery of the deed.

(22) LEAD-BASED PAINT: The following "WARNING STATEMENT" is made pursuant to the Federal Residential Lead Based Paint Hazard Reduction Act of 1992. Section 1018 of this law directed the Environmental Protection Agency (EPA) and the Department of Housing and Urban Development (HUD) to require the disclosure of known information on lead-based paint hazards before the sale or lease of most housing built before 1978.

"EVERY PURCHASER OF ANY INTEREST IN RESIDENTIAL REAL PROPERTY ON WHICH A RESIDENTIAL DWELLING WAS BUILT PRIOR TO 1978 IS NOTIFIED THAT SUCH PROPERTY MAY PRESENT EXPOSURE TO LEAD FROM LEAD-BASED PAINT THAT MAY PLACE YOUNG CHILDREN AT RISK OF DEVELOPING LEAD POISONING. LEAD POISONING IN YOUNG CHILDREN MAY PRODUCE PERMANENT NEUROLOGICAL DAMAGE, LEARNING DISABILITIES, REDUCED INTELLIGENCE QUOTIENT, BEHAVIORAL PROBLEMS, AND IMPAIRED MEMORY.

LEAD POISONING ALSO POSES A PARTICULAR RISK IN PREGNANT WOMEN. THE SELLER OF ANY INTEREST IN RESIDENTIAL REAL PROPERTY IS REQUIRED TO PROVIDE THE BUYER WITH ANY INFORMATION ON LEAD-BASED PAINT HAZARDS FROM RISK ASSESSMENTS OR INSPECTIONS IN THE SELLERS' POSSESSION AND NOTIFY THE BUYER OF ANY KNOWN LEAD-BASED PAINT HAZARDS. A RISK ASSESSMENT OR INSPECTION FOR POSSIBLE LEAD-BASED PAINT HAZARDS IS RECOMMENDED PRIOR TO PURCHASE.

Prior to the Closing Seller will provide to Purchaser the pamphlet developed by EPA, HUD, and the Consumer Product Safety Commission (CPSC) titled "Protect Your Family from Lead in Your Home."

Seller represents that he/she has no knowledge or reasonable suspicion that the Premises contain lead-based paint, nor does the Seller have any information on lead-based paint hazards from risk assessments on inspection in the Seller's possession.

Purchaser, at her/his own cost and expense shall have the right to have the Premises inspected by a certified firm that conducts inspection to ascertain the risk of a lead-based paint hazard and notice of any such hazard shall be delivered to Seller's attorney within fifteen days from the date of this Contract. If said inspection report discloses a finding of a lead-based paint hazard, the Purchaser may elect within ten (10) days after delivery of the notice to the Seller's attorney to (a) withdraw from this agreement and cancel the sale or (b) to proceed with the purchase of said Premises notwithstanding the presence of the lead-based paint hazard, but there shall be no abatement of the purchase price. If the election is made by the Purchaser to cancel this Contract, upon the return by the Seller to the Purchaser of the down payment, this Contract shall be deemed null and void and neither party shall have any rights or obligations as against the other and this agreement shall be terminated and wholly cease.

(23) PROPERTY CONDITION DISCLOSURE: Purchaser acknowledges that Seller has not provided a Property Condition Disclosure Statement provided for in Article 14 of the Real Estate Property Law, known as the Property Condition Disclosure Act (the Act). In accordance with the terms of the act, Seller shall give Purchaser a credit of $500.00 against the agreed upon purchase price in lieu of providing the Property Condition Disclosure Statement and Purchaser agrees to accept such $500.00 credit in full satisfaction of Seller's obligations under the Act.

Seller and Purchaser hereby agree notwithstanding the provisions of said Act that this is an "As Is" sale and all the provisions of paragraph 12 - Condition of the Property in the printed form contract and paragraph 3 of this rider apply.

IN WITNESS WHEREOF, the parties hereto have duly executed this agreement the day and year above written.

_____  
BRIAN COHEN  
Seller

_____  
SOCIAL SECURITY #

_____  
LORI C. COHEN  
Seller

_____  
SOCIAL SECURITY #

_____/s/_____  
SCOTT NEHAR  
Purchaser

_____  
SOCIAL SECURITY #

## SHORT SALE RIDER

1. It is understood by the parties hereto that the Seller's obligation to transfer title to the Purchaser's is contingent upon the Seller's existing mortgagee (lien holder) agreeing to accept an amount less than what they are entitled in full satisfaction of the Seller's mortgage debt based on its approval of the contract sales price.

    a) Seller agrees to make a diligent and expeditious effort to obtain the necessary approval of the sales price from its lien holder.

    b) Seller represents that its sole lien holder is _____ and the current balance owed on the loan is approximately $_____.

2. In the event that the approval of the contract price is not obtained by the Seller within one hundred eighty (180) days of the date of this contract, the purchaser may terminate this deal anytime thereafter by forwarding written notice to the seller's attorney, upon which the down payment shall be returned within seven (7) days of said notice.

3. In the event that the Seller's lien holder requests a sale price greater than the contract sale price, notice of such request shall be sent to the Purchaser's attorney in writing together with the draft of the HUD-1 Respa statement that was sent to the lien holder as part of the short-sale application. Within five (5) days of the receipt thereof Purchaser may:

    a) Accept the price increase whereupon the Seller and Purchaser shall amend the contract of sale to reflect the new contract sales price and the amount of the mortgage in the mortgage contingency clause. (The time for the Purchaser to obtain a new mortgage commitment will be extended twenty (20) days), or

    b) Terminate this contract by forwarding written notice to the Seller's attorney requesting the return of the down payment.

4. To the extent any portion of this Rider conflicts with the contract of sale or any other riders to this contract, the provisions of this rider shall govern.

_____
BRIAN COHEN
Seller

_____
SCOTT NEHER
Purchaser

_____
LORI C. COHEN
Seller